IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: ASBESTOS PRODUCTS | : | |
| LIABILITY LITIGATION (No. VI) | : | Civil Action No: MDL 875 |
| | : | |
| JEANETTE MORRIS, Individually and as | : | E.D. Pa. No: 09-CV-61495 |
| Personal Representative on behalf of the | : | |
| estate of MICHAEL MORRIS, | : | |
| | : | |
| v. | : | |
| | : | |
| ANCHOR PACKING CO., et al., | : | |

**REPORT AND RECOMMENDATION**

DAVID R. STRAWBRIDGE                                                        FEBRUARY 19, 2013
United States Magistrate Judge

      Presently before the Court is "Defendant CBS Corporation's ["CBS"] Motion to Enforce Settlement" (Doc. 83), Plaintiff's response (Doc. 89), CBS's reply (Doc. 90), Plaintiff's sur-reply (Doc. 97), CBS's January 24, 2013 supplement (Exhibit A), and Plaintiff's response to the supplement (Doc. 101). On January 17, 2013, we heard oral argument by telephone and pursued what we considered to be necessary inquiries concerning the post-agreement actions of the principal lawyers involved. (See 01-md-875 Doc. 8802 "Transcript"). The matter is now ripe for resolution, and by Judge Robreno's January 29, 2013 Order of Reference, (Doc. 99), we submit our "proposed findings of facts and recommendations for the disposition of this Motion."

      By this motion, CBS seeks to enforce what it asserts is a valid and binding settlement agreement entered into between its counsel, Michael Evert, Esq., and Plaintiff's counsel, Allen D. Vaughan, Esq., on September 19, 2002, as confirmed in a September 20, 2002 letter from Mr. Vaughan to Mr. Evert. (Doc. 83-2 "Settlement Letter"). Plaintiff contends that to the extent a settlement agreement exists, its enforcement is barred by the Wisconsin six year statute of limitations pertaining to contracts. Wis. Stat. § 893.43. For the reasons set out below, we recommend that the

motion be denied.

I.     FACTUAL FINDINGS

The significant facts concerning this motion are undisputed.  Counsel met at a court-scheduled settlement conference in Philadelphia on September 19, 2002 where they discussed resolution of this case.  There is no serious dispute that they reached an agreement at this conference as reflected in the September 20, 2002 Settlement Letter, where Mr. Vaughan stated that "[a]s we agreed in Philadelphia yesterday, we will settle" Morris.[1]  (Doc. 83-2).  To effectuate the implementation of the agreement, Mr. Vaughan then asked Mr. Evert to "[p]lease email or fax [him] a release so [they] might affect [sic] this settlement."  (Id.).  Mr. Vaughan also affirmed his understanding that Mr. Evert would "make [his] best efforts for a 2002 payment to" the Plaintiff.  (Id.).  Remarkably, the record fails to show any effort by either counsel to take steps to consummate the agreement for nearly nine years.  Neither Mr. Evert nor Mr. Vaughan have any recollection of sending or receiving a release.  (Transcript 11:22-25, 15:18-16:11).  Neither has come forward with any explanation for why they went silent for so long.  It is nonetheless undisputed that Plaintiff has not provided a release and CBS has not paid the agreed settlement amount.

It appears that the "first attempt to reconcile" this matter came in an April 12, 2011 letter to Plaintiff's counsel from CBS's counsel, Richard M. Lauth, Esq. (Transcript 19:13-20:4). The letter included a spreadsheet of some 406 cases that CVLO had listed as open but that CBS reported as either settled or dismissed.  Morris was among this group.  CBS asked Plaintiff's counsel to provide an explanation if they had any reason to dispute that these 406 cases were settled or dismissed.  (Id.).

---

[1] The letter provides the settlement amount which counsel agreed upon.  However, on the copy provided to us, the amount, appropriately, has been redacted.

During the hearing, when asked whether he had responded to that letter, Plaintiff's counsel stated that he could not "answer the question right now" in that he did not know whether his firm had responded or not. (Transcript 31:8-14).

CBS again raised the disputed status of the case in a June 25, 2012 email, when its counsel contacted Plaintiff's counsel to discuss why they had Morris (and one other case) listed as open in light of the long pending settlement. (Doc. 83-5). It appears that Plaintiff's counsel did not respond to this email other than by contacting CBS on November 8, 2012 regarding Plaintiffs proposed motion for the issuance of a suggestion of remand back to the Eastern District of Wisconsin. (Doc. 80). In response to this inquiry, CBS's counsel wrote in an email of the same date that "Morris is the subject of a prior settlement between your firm and [CBS]." (Doc. 83-6). Plaintiff's counsel then asserted in an email written approximately one hour later that "[t]here was never any settlement agreement paid in this case. We show it as pending and I never signed any dismissal order." (Id.). On November 20, 2012, CBS filed this motion requesting that the Court enforce the ten year old agreement.

Based on the discussion above, and having given full consideration to the submitted materials, we make the following findings of fact.

1. On September 19, 2002, the parties agreed that they would settle the case and that Plaintiff would provide a release in exchange for an agreed sum of money from CBS.

2. This agreement was memorialized in Mr. Vaughan's September 20, 2002 letter.

3. Plaintiff never provided a signed release.

4. CBS never paid the agreed upon sum.

5. Neither party raised an issue about the status of the case until April 12, 2011.

  6. CBS did not seek the Court's intervention to enforce the agreement until November 20, 2012, when it filed this motion.

## II. DISCUSSION

Having found that the parties entered into a valid agreement on September 19, 2002, we turn to the questions raised by the parties: first, whether the Wisconsin statute of limitations precludes CBS from enforcing the agreement and second, whether equitable estoppel should preclude Plaintiff from relying on the statute.

### A. Statute of Limitations

The parties agree that Wisconsin law, particularly the Wisconsin statute of limitations for contracts, applies. We accept that such is the case. The statute provides that "an action upon any contract . . . shall be commenced within 6 years after the cause of action accrues or be barred." Wis. Stat. Ann. § 893.43. Under Wisconsin law, "a cause of action generally accrues for statute of limitations purposes 'where there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it.'" Les Moise, Inc. v. Rossignol Ski Co., Inc., 122 Wis. 2d 51, 57, 361 N.W.2d 653, 656 (Sup. Ct. 1985) (quoting Barry v. Minahan, 127 Wis. 570, 573, 107 N.W 488, 490 (Sup. Ct. 1906)); see also CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp., 174 Wis. 2d 604, 607, 609, 497 N.W.2d 115, 116, 117 (Sup. Ct. 1993) (holding that "a contract cause of action accrues at the moment the contract is breached, regardless of whether the injured party knew or should have known that the breach occurred"). Thus, the relevant inquiry is to determine the point in time when the claim is capable of being enforced in light of a breach.

While we conclude that the agreement bound the parties on September 19, 2002, we

recognize that neither party would seek court involvement to enforce the agreement until the opposing party failed to perform within a reasonable period of time. We further conclude that the claim became enforceable (and, thus, the cause of action accrued) after that reasonable period of time elapsed. It is also at this moment that the breach due to the non-performance occurred. CBS contends that the cause of action accrued when Plaintiff's counsel breached the agreement by responding on November 8, 2012 that there had been no settlement. While this may have been CBS's first concrete notice of a breach, we are unable to accept that this is the relevant date. We point out to CBS that Wisconsin law is clear that the statute of limitations begins to run when the cause of action accrues, not when a party discovers a breach. CLL Assocs. Ltd. P'ship, 497 N.W.2d at 117.

In attempting to discern the point in time when a parties' inaction creates a right to enforce the claim, we consider the parties' general custom and course of dealing. Karp v. Coolview of Wis., Inc., 25 Wis. 2d 299, 303, 130 N.W.2d 790, 792 (Sup. Ct. 1964) (recognizing that in a contract action, "a local custom or usage or an individual course of dealing between two parties may . . . [have] probative value to show the intention of the parties to a contract or on what the parties had a right to depend in their dealing"). Plaintiff's counsel contends that "the custom and practice [in these cases] has always been that once an agreement or a number had been established that the defendant would provide a release within 30 days, and generally paid within 30 to 60 days of a signed release." (Transcript 11:6-11). Mr. Evert agreed that, broadly speaking, this was correct.[2] (Transcript 15:8-19).

---

[2] On September 19, 2002, along with Morris, counsel settled five additional CVLO cases. (Doc. 83-2; Exhibit A). Two of these cases were later inexplicably dismissed by Plaintiffs' counsel before receiving payment. In the other three cases, Plaintiffs' counsel did not provide releases until May 2008, after which CBS paid the claims in July and August 2008. CBS contends that these cases show a different course of dealing between the parties and that since Plaintiffs waited almost six years to submit the other releases, CBS had no notice of a breach in Morris until sometime after 2008. As discussed above, under Wis. Stat. § 893.43, the statute of limitations begins to run when

5

This course of dealing was reinforced by Mr. Vaughan's Settlement Letter where he referred to an agreement that CBS would make its "best efforts for a 2002 payment." (Doc. 83-2). While we would not presume to state that we can establish a specific date upon which this cause of action accrued, and while we acknowledge that under the circumstances of this case, it would not have accrued until after the end of 2002, it unquestionably would have accrued long before November 20, 2006, the earliest date upon which a cause of action to enforce the agreement could have been brought within the Wisconsin Statute. Given this conclusion, the claim to enforce is barred by the Wisconsin statute of limitations.

    **B.**     **Equitable Estoppel**

In the alternative, CBS contends that, if it filed its motion outside of the statute of limitation period, Plaintiff should be equitably estopped from relying on the statute. Wisconsin law has developed guidelines which aid in determining whether equitable estoppel should apply:

> (1) Is the [Plaintiff] guilty of fraudulent or inequitable conduct? (2) Did [Defendant] fail to timely commence the action because he or she relied on the [Plaintiff's] conduct? (3) Did the [Plaintiff's] questionable conduct occur before the statute of limitations expired? (4) Did the [Defendant] diligently pursue the suit after the [Plaintiff's] questionable conduct ceased? (5) Did the [Defendant] rely on the [Plaintff's] conduct to his or her disadvantage? and (6) The [Plaintiff] need not have engaged in actual fraud.

Williams v. Kaerek Builders, Inc., 212 Wis. 2d 150, 161, 568 N.W.2d 313, 318 (Ct. App. 1997). CBS, as the moving party, "bears the burden of proving each element by clear and convincing evidence." Yocherer v. Farmers Ins. Exch., 252 Wis. 2d 114, 131, 643 N.W.2d 457, 466 (Sup. Ct. 2002). First,

---

the cause of action accrues, not when a party discovers a breach. CLL Assocs. Ltd. P'ship, 497 N.W.2d at 117. We are unwilling to accept that this establishes a *reasonable* course of dealing such as to excuse the inaction of CBS.

it is not even clear who had the duty to act first under the agreement. The Settlement Letter requests CBS submit a release, which CBS's counsel admits he does not remember sending. (Doc. 83-2; Transcript 15:18-16:11). CBS claims that Plaintiff's counsel should have used a standard release that was already in its possession, but has not provided any evidence establishing this practice. Thus, one could conclude that CBS breached the agreement by failing to timely provide a release to Plaintiff. If this is the case, CBS certainly cannot rely on estoppel. If it was Plaintiff who breached by failing to timely submit a signed release, CBS is still not entitled to relief. We find no evidence of fraudulent or inequitable conduct. Instead, the evidence submitted tends to show that both parties neglected the settlement agreement for nearly nine years. Plaintiff's counsel, consistent with their position that the settlement was either never agreed to or subsequently abandoned, points out that they "continued to serve all documents relating to the lawsuit on CBS." (Doc. 89 p. 2; Transcript 18:17-23). CBS, on the contrary, seeks to show its reliance on the agreement by pointing out that it did not serve discovery or file dispositive motions. (Doc. 83 p. 3; Transcript 18:17-23). While it might well appear that CBS relied on the agreement by refraining from serving discovery or filing dispositive motions, we are unable to conclude that this reliance could be said to be reasonable. Given that nine years elapsed before CBS raised the issue, we also conclude that CBS failed to diligently pursue the claim. Thus, we find no reason to invoke equitable estoppel.

### III.    CONCLUSION

We conclude that the Wisconsin statute of limitations precludes CBS's right to enforce the settlement agreement. We further conclude that CBS is not entitled to rely on equitable estoppel to toll the running of the statute of limitations.

Our recommendation follows.

## RECOMMENDATION

AND NOW, this 19th day of February, 2013, upon consideration of "Defendant CBS Corporation's Motion to Enforce Settlement" (Doc. 83), Plaintiff's response (Doc. 89), CBS's reply (Doc. 90), Plaintiff's sur-reply (Doc. 97), CBS's January 24, 2013 supplement (Exhibit A), Plaintiff's response to the supplement (Doc. 101), and after a January 17, 2013 oral argument (01-md-875 Doc. 8802), and for the reasons described in the foregoing report, it is hereby respectfully **RECOMMENDED** that CBS's motion be **DENIED**.

      /s/ David R. Strawbridge
      David R. Strawbridge
      United States Magistrate Judge